UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                      **MEMORANDUM & ORDER**
      v.                                         06-CR-130 (NGG)

LAJOS ABE BERGER,

       Defendant.
----------------------------------------------------------X
GARAUFIS, United States District Judge.

      Defendant appeals from an order by Magistrate Judge Lois Bloom denying bail and imposing a permanent order of detention pending trial. For the reasons set forth below, Judge Bloom's decision is reversed and a bail hearing will be held to determine the appropriate bail conditions that "will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community" in accordance with the Bail Reform Act, 18 U.S.C. § 1342(e). The bail hearing will take place before this court on Monday August 14, 2006 at 2:00 p.m.

**I.    Background**

      Defendant Lajos Abe Berger ("Berger" or "Defendant") was indicted, along with twenty co-defendants, in March 2006 for the commission of several crimes, including racketeering and racketeering conspiracy, in connection with participation in the alleged criminal enterprise known as the "Greenpoint Crew." The criminal activities alleged to have been committed by members and associates of the Greenpoint Crew between January 2005 and February 2006 include narcotics trafficking, firearms trafficking, robbery, extortion, credit card fraud,

identification and document fraud and trafficking in stolen vehicles and other property. For his alleged participation in the Greenpoint Crew's criminal activities, Defendant Berger is charged in Counts One and Two of the Indictment (racketeering and racketeering conspiracy), Count Eight (conspiracy to traffic in fraudulent identification documents), Count Thirteen (possession of fraudulent identification documents), and Count Twenty-three (conspiracy to sell stolen property). (See Indictment).

Berger was arrested on March 8, 2006 and arraigned before Magistrate Judge Ramon Reyes, at which time a temporary order of detention was imposed pending a hearing to take place two days later. (See Docket Entry Nos. 20, 21). On March 10, 2006, Magistrate Judge Viktor Pohorelsky entered a permanent order of detention, with leave to reapply for bail, after Berger presented no bail package. (See Docket Entry No. 52). Finally, on April 7, 2006, Magistrate Judge Lois Bloom conducted a bail hearing, and ruled to continue the permanent order of detention, finding that Berger presented a danger to the community and a flight risk. (See Transcript of Bail Hearing Before Magistrate Judge Bloom dated 4/7/06, at 27-28).

Currently before the court is Berger's appeal of Judge Bloom's decision denying him bail. The Defendant appeared before this court for argument on the matter on August 2, 2006, at which time I reserved decision. My decision follows.

## II. Applicable Law

The Bail Reform Act of 1984 ("BRA") provides that "[i]f a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18

U.S.C. § 3145. If an appeal is raised, "[a] district judge must undertake a de novo review of a magistrate judge's decision to release or detain a defendant." United States v. Gotti, 358 F. Supp. 2d 280, 282 (S.D.N.Y. 2005). Thus, this court "should fully reconsider a magistrate's denial of bail and . . . should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985).

The BRA directs the court to impose the least restrictive bail conditions necessary to protect the safety of the community and reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(c)(1)(B). Accordingly, it "limits the circumstances under which a district court may order pretrial detention." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988) (citing United States v. Salerno, 481 U.S. 739 (1987)). Berger is presumed innocent, and it is only a "limited group of offenders" who should be denied bail pending trial. Gotti, 358 F. Supp. 2d at 283 (quoting United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987)). Pursuant to 18 U.S.C. § 3142(f)(2), a pretrial detention motion is permitted only when the charge against the defendant is for certain enumerated crimes, for example crimes of violence and serious narcotics offenses, or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice. See Friedman, 837 F.2d at 49. In the present case, there is no suggestion that Berger's charges fall within the statutorily enumerated crimes under the BRA. Thus, this court is left to consider whether Berger poses a serious risk of flight, or a serious risk of obstruction of justice.

Once a motion for detention has been filed, the district court engages in a two step-inquiry. See United States v. Shakur, 817 F. 2d 189, 194 (2d Cir. 1987). First, the court determines by a preponderance of the evidence whether the defendant presents a risk of flight or obstruction of justice. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). At the second

3

step, the court analyzes whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial. Friedman, 837 F.2d at 49; United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986). Importantly, the Second Circuit has noted that "the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the [enumerated offenses]." Friedman, 837 F.2d at 49.

### III. Discussion

#### A. Risk of Flight

There has been no showing, by a preponderance of the evidence, that Defendant Berger presents a serious risk of flight. The Government maintains two principal grounds to support a finding of flight risk: (1) the "troublesome ambiguity" concerning Berger's place of residence, marital status and financial resources; and (2) the likelihood of a long sentence if convicted of the crimes charged. With respect to the first category, the Government correctly asserts that confusion has arisen surrounding Berger's two residences/offices in Brooklyn, whether he is currently married or divorced from his significant other, and whether he maintains an office in the diamond district of Manhattan, among others matters. (See Gov't Resp. Opp'n Def.'s Bail Application, dated 8/1/2006 ("Gov't Opp'n"), at 10-11). In addition, the Government asserts that Berger has "failed to accurately account for his income and assets" inasmuch as he requested and was appointed CJA counsel at the time of his arrest, but is now represented by two privately retained attorneys. (Gov't Opp'n, at 11).

Although the court agrees that some of the factual circumstances surrounding Berger's personal and professional life are unclear, and perhaps even suspicious, Berger, through his

4

attorney, did provide plausible explanations for the confusion at the hearing before this court that occurred on August 2, 2006. (See Transcript of Bail Hearing Before Judge Garaufis dated 8/2/06 ("Tr.") at 9-11). More importantly, that Berger may maintain a second residence that is also used as an office, or that his marital status is uncertain, does not prove to this court that he is a flight risk. Additionally, with respect to his finances, Berger's retained attorneys who appeared at the most recent hearing, informed the court that Berger was not paying their retainer fee, but rather that members of his community were. (Tr. at 12). There has been no evidence proffered that Berger maintains significant or secretive wealth that would assist him in fleeing.

In assessing Berger's risk of flight, I am persuaded by the precedent of United States v. Friedman. There, the Second Circuit vacated a finding of flight risk by the district court, describing the defendant as follows:

> [I]t is undisputed that Friedman is a life-long New York resident, that he has no prior criminal record, that he has no passport or known ability to evade surveillance, that he has worked gainfully in the New York area for twenty-five years prior to his arrest, and that he is married and has three children, all of whom live in the New York area. Moreover, Friedman apparently took no steps to leave the jurisdiction after federal agents executed a search warrant at his home on November 3, 1987 and after he was arrested at home on state charges three weeks later. Finally, bail has been set for Friedman on the state charges, which are far more serious than those charged in this case.

Friedman, 837 F.2d at 49-50. The facts of Friedman are obviously not analogous to the present case, however, there are important similarities. Berger is 52 years old; he has lived in Brooklyn for the past 43 years; his purported wife and two young children (ages 9 and 13) live in Brooklyn as does his elderly mother; he also has extensive business ties in the New York area. Moreover, the Government has his passport, and there is no evidence suggesting that he has significant ties

5

in foreign countries to which he might flee. Finally, Berger has a fairly extensive prior criminal history, for which he has consistently appeared for court appearances. He also has previously voluntarily surrendered to serve a forty-one month sentence in connection with a prior conviction.

Thus, inasmuch as the Second Circuit in Friedman looked to a confluence of factors that taken together failed to prove a risk of flight, I reach an analogous conclusion here. Indeed, in Friedman, the court specifically noted that in "other cases concerning risk of flight, we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." Id. at 50. The court went on to discuss, by way of example, two cases where a risk of flight was proven, noting that in those cases, one defendant had "used a number of aliases, had lived from hotel to hotel, had shown skill in avoiding surveillance, and had hidden assets," see Jackson, 823 F.2d at 6-7, and the other defendant had actually previously been a fugitive on the very charges implicated in the case, see Shakur, 817 F.2d at 191. Facts such as those presented in Jackson and Shakur are easily distinguishable from the present case.

I do not believe the Government has met its burden in proving Berger to pose a risk of flight by a preponderance of the evidence. Thus, with respect to the first prong of the BRA analysis, I now must decide if Berger nonetheless poses a serious risk of obstruction of justice.

**B.	Risk of Obstruction of Justice**

The Government argues that Berger "has in a past case and in the instant case attempted to obstruct justice." (Gov't Opp'n, at 9). In 1996, Berger was convicted in this district of conspiring to possess stolen goods; he was sentenced to forty-one months imprisonment and

6

three years supervised release. In his sentencing for that crime, the Probation Department recommended an obstruction of justice enhancement based on Berger's threat to a cooperating witness that was recorded by the Government. In the recorded communication, Berger threatened to "punish" this person once released from prison. (See id. at 9-10). Berger explains that this cooperating witness was a woman with whom he had an "intimate relationship" and who had been a signatory to his recognizance bond. (See Def.'s Mot. Appeal dated 7/28/06 (Def.'s Mot. Appeal"), at 7). He declares that their relationship ended poorly and she demanded removal from the bond, and thus he characterizes the threat towards her as an "isolated incident" resulting from anger "over her reaction to their break-up, not over a provision of testimony or other evidence." (Id.; Tr. at 8-9).

Given Berger's explanation, which is not unreasonable, the fact that this incident occurred ten years ago, and the fact that it is unrelated to the current prosecution, I do not find it persuasive proof that Berger currently presents a risk of obstruction of justice.

The Government also contends that Berger has engaged in obstruction of justice in the present case, stating that a cooperating witness informed the Government that, while in the Metropolitan Detention Center, Berger referenced disposing of an allegedly stolen violin implicated in this indictment with the intention of forcing the Government to dismiss the stolen violin charges. (Gov't Opp'n, at 10; Tr. at 15). The Government also states that after his arrest and incarceration, materials that had been previously seen in Berger's residence were removed before the execution of a search warrant of the premises. (Gov't Opp'n, at 10).

While these allegations are troubling, I cannot find that they constitute a showing of risk of obstruction of justice, by a preponderance of the evidence, in line with case law where pretrial

7

detention was deemed proper on this ground.  In such cases, defendants have consistently been found to have engaged in severe witness tampering or worse to support a finding of obstruction. See e.g., United States v. LaFontaine, 210 F.3d 125, 132-33 (2d Cir. 2000) (finding of obstruction of justice where defendant lied to court at detention hearing, contacted government witness whom she was ordered not to contact, and tampered with witness expected to testify at defendant's upcoming trial); United States v. Ferranti, 66 F.3d 540, 543 (2d Cir. 1995) (denying bail to defendant shown to have engaged in witness tampering); United States v. Cantarella, No. CR-02-0307, 2002 WL 31946862 (E.D.N.Y. Nov. 26, 2002) (Garaufis, J.) (denying bail where defendant allegedly participated in murder of potential adverse witness); United States v. Agnello, 101 F.Supp.2d 108, 112 (E.D.N.Y. 2000) (Gershon, J.) (finding that allegations of witness tampering warranted pretrial detention).  Although it is a close call, I find Berger's alleged activity does not prove that Berger's poses a serious risk of obstruction of justice in the future.  Further, stringent conditions of release can be imposed to address the possibility of further incidents of obstruction akin to Berger's alleged past conduct in connection with the violin and the removal of material from his residence.

### C. Danger to Community

In addition to finding that Berger does not present a serious risk of flight or of obstruction of justice, I also conclude, for the reasons explained below, that the Government has failed to demonstrate by clear and convincing evidence that Berger poses a danger to the community within the meaning of the BRA and case law interpreting the statute.  Accordingly, I am constrained to vacate the permanent order of detention imposed against him and I will consider an appropriate bail package that will reasonably assure the safety of the community.  The exact

nature of the conditions to be imposed will be discussed at the bail hearing on August 14, 2006.

In considering whether a criminal defendant poses a danger to the community, I am obliged to assess the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(g).

In this case, the first factor plainly favors granting Berger bail pending trial. He has not been charged with crimes of violence, but rather with crimes concerning fraudulent documents and the sale of stolen property. Likewise, consideration of the third factor – the history and characteristics of the person – suggests that release pending trial would be appropriate in this case under defined conditions. Although Berger has an extensive criminal history, he has never been convicted of a violent crime. Nor is there any evidence or proffer, beyond the incident with his former girlfriend in connection with his 1996 case, of Berger engaging in violent or threatening activity. Moreover, Berger has strong ties to the community in which he has lived for over forty years, as was evidenced by the number of people in the courtroom to support him at his most recent hearing. He also has young children and a history of consistently being present in court when required to do so. Thus, Berger's "history and characteristics" weigh in favor of pretrial bail.

The second factor, the weight of the evidence against Berger, is in dispute, and there is no need to address the merits of the Government's case against Berger at this time. I cannot say with certainty whether the Government has a particularly strong case against Berger, but I do

9

note that the Government has proffered that it is in possession of permissibly obtained recordings that purportedly implicate Berger in the crimes charged. (Tr. at 15-16). Nonetheless, the Defendant's attorney vigorously maintains that he has a strong defense. (Tr. at 18). Thus, this factor does not weigh heavily in my decision.

Finally, the fourth factor contemplates the nature and seriousness of the danger posed by the defendant's release. With respect to this factor, the Government argues that Berger's recidivism and history of violating court imposed conditions of release render him a danger to society. (See Gov't Opp'n, at 7-9). Berger's past convictions are numerous: in 1982 he was convicted of issuing a bad check; in 1987 he was convicted in this district of possession of cocaine and credit card fraud; in 1996, as mentioned above, he was convicted in this district of conspiring to posses stolen goods; in October 2001 he convicted in New Jersey of credit card fraud conspiracy; and finally, on February 28, 2006 (eight days before his arrest on the instant indictment), Berger was arrested by the New York Police Department and charged with grand larceny in the fourth degree. Without question, Berger is a career criminal. Moreover, according to the Government, in connection with his three most recent convictions, he has exhibited a pattern of violating court-imposed conditions of release by committing new crimes while under the supervision of a probation officer for his previous convictions. In light of his recidivism and failure to abide by conditions of his release, the Government urges this court to find him a danger to society.

Berger responds, and this court agrees, that Berger's recidivist tendencies do not constitute a danger to the community within the meaning of the BRA. In United States v. Salerno, 481 U.S. 739 (1987), the Supreme Court upheld the BRA against a facial challenge to

10

its constitutionality, and noted that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat." Salerno, 481 U.S. at 751. From this statement, and case law interpreting the BRA, it is reasonable to conclude that the "danger" element of the BRA is intended to apply in cases where there is a threat to the *safety* of individuals or the community at large. See e.g., Ferranti, 66 F.3d 540, 544 (2d Cir. 1995) (denying bail for defendant charged with conspiracy to commit arson, arson resulting-in-death, witness tampering and mail fraud); United States v. Orena, 986 F.2d 628, 633 (2d Cir. 1993) (overturning district court order releasing defendants charged with RICO violations based on predicate acts of murder, conspiracy to murder, loansharking and illegal possession of weapons); United States v. Colombo, 777 F.2d 96, 99-100 (2d Cir. 1985) (reversing district court's revocation of a Magistrate Judge's pretrial detention order because testimony of defendant's former leadership role in a crime family provides clear and convincing evidence that defendant is a threat to the safety of the public and that no set of conditions short of detention adequately protects the public).

I note that the Government has drawn my attention to a statement contained in the legislative history of the BRA, specifically a Senate Report statement that declares that "language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction that merely danger of harm involving physical violence." (See Gov't Opp'n, at 6 (quoting S. Rep. No. 225 98th Cong., 1st Sess. 6-7, reprinted in 1984 U.S. Code. Cong. & Admin. News 3182, 3195-96)). This language is telling,

11

and arguably applicable to Berger's case because, while not posing a threat of physical violence, Berger certainly poses a threat of continued criminality in the form of fraud-based crime.

However, as the Defendant pointed out, the Senate Report went on to acknowledge narcotics trafficking as an example of a crime that, although non-violent, nonetheless poses a danger to the safety of a community. (Def.'s Mot., at 11 (citing Senate Report at 3196). The danger posed by narcotics trafficking is self-evident although not necessarily one of physical violence, and, I believe it is distinguishable from any danger posed in the instant case by Berger. Berger's threat of engaging in document based fraud crimes or stolen property crimes, though serious, do not implicate the physical safety of persons or the community. Indeed, in cases this court has found that have discussed the broader application of the BRA beyond physical violence, the threat of danger to safety of persons is clear and distinguishable from the threat posed by credit card fraud or the like. For example, in United States v. Lee, 208 F.3d 228 (Table), 2000 WL 228263 (10th Cir. Feb 29, 2000), an unpublished decision of the Tenth Circuit, the court affirmed pre-trial detention of a defendant under the BRA where defendant was alleged to know the location of tapes containing large amounts of classified and confidential restricted data relating to nuclear weapons research, design, and construction that he had illegally downloaded. Lee, 2000 WL 228263, at *2. There, the court expressed that this case fell under the "broader construction" of the BRA's language concerning safety concerns, despite the fact that the defendant had not physically threatened a person or persons. As with narcotics trafficking, however, the threat to safety posed by the facts of Lee is apparent and indisputable.

The case that best supports the Government's position is the Second Circuit case of United States v. LaFontaine, 210 F.3d 125 (2d Cir. 2000). There, the court addressed how to

12

reconcile a finding of danger to the community in the absence of threats of physical violence. In LaFontaine, the defendant was found to have engaged in obstruction of justice in her pending case by contacting a witness while on bail in violation of a court-ordered condition, attempting to tamper with a witness in her case, and committing perjury in connection with her detention hearing, all of which supported her pretrial detention order. See LaFontaine, 210 F.3d at 132-33. With respect to the charge of witness tampering, the court noted that LaFontaine's case was unusual: "Unlike the defendants in other cases where witness tampering was found to constitute a danger to the community, LaFontaine is a white-collar criminal with no connection to the mob, or to narcotics." Id. at 134 (internal citations omitted). Nonetheless, the court found that although there were "no allegations of violence or threats aimed against witnesses, we do not find that to be determinative on the issue of 'danger to the community.'" Id. The court affirmed revocation of the defendant LaFontaine's bail stating "we reject LaFontaine's contention that her attempts to influence the testimony of [the witness], among others, does not constitute the type of danger to the community that would support detention." Id. at 135.

Notwithstanding the precedent of LaFontaine, I nonetheless find that Berger does not pose a danger to the community within the definition of the BRA. The holding of LaFontaine is distinguishable because, there, the court rested its decision on the fact that witness tampering presents a "harm to the integrity of the trial," and it was this harm that the court found to constitute danger to the community warranting pretrial detention, even in the absence of threats of physical violence. Id. In the present case, as discussed above, I find that the Government has not met its burden of proving by clear and convincing evidence that Berger presents a threat to the integrity of his upcoming trial. The Government has provided no case, and indeed this court

13

has found no case, that supports the proposition that a pattern of recidivism for non-violent crimes can constitute a danger to community to support pretrial detention. Thus, I find that Berger does not present a threat of danger to the community that no set of bail conditions could cure.

**IV.     Conclusion**

For the reasons stated above, this court finds that the Government has failed meet its burden of proving that Defendant Berger poses a serious threat of flight risk or obstruction of justice, or that he poses a threat of danger to the community that no conditions of bail could adequately address. Accordingly, a bail hearing will be held to determine an appropriate bail package that "will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community" in accordance with the Bail Reform Act, 18 U.S.C. § 1342(e). The bail hearing will take place before this court on Monday August 14, 2006 at 2:00 p.m.

SO ORDERED.

Dated: August 9, 2006                                                /s/
      Brooklyn, N.Y.                                        Nicholas G. Garaufis
                                                      United States District Judge